9 F.3d 1554
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Rogelio Saldena MENDEZ, Defendant-Appellee.
 No. 91-30435.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1992.
Decided Oct. 29, 1993.
 
 Before: HUG, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The Government appeals the district court's downward departure from the Sentencing Guidelines in sentencing career offender Mendez to a sentence of twenty-one months instead of the career offender guidelines, U.S.S.G. § 4B1.1, range of 168-210 months. It argues that the district court erred in departing from the career offender provisions on the basis of the small quantities of drugs involved, the previous leniency of state court sentences, and its perception that the federal prosecution was invoked for an improper purpose. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. The jurisdiction of this court rests on 18 U.S.C. § 3742(b) (Sentencing Guidelines) and 28 U.S.C. § 1291 (Final Judgments).
 
 FACTS
 
 3
 Rogelio Mendez is a thirty-nine-year-old male who, though previously employed in the Portland Terminal Railroad Company and the Oregon Army National Guard, is now unemployed and homeless. On April 18, 1991, the Portland Police Bureau arrested him for selling .16 grams of cocaine to an undercover officer in the Old Town section of Portland. He pled guilty to a one count indictment under 21 U.S.C. § 841(a)(1).
 
 
 4
 Prior to this conviction Mendez has been arrested and sentenced for four other offenses in Oregon, three of them drug-related. They include: (1) second degree burglary in 1974; (2) delivery of .8 grams of cocaine in August, 1989; (3) delivery of .19 grams of cocaine in September, 1989; and (4) delivery of .01 grams of heroin to an undercover officer in November, 1989. The drug-related offenses occurred within a period of less than four months and the drugs involved totalled 1.15 grams of cocaine and .01 grams of heroin. Mendez received a prison term of two years for the .8 gram of cocaine conviction and was paroled after five months. He was put on probation for five years in connection with the .19 gram cocaine conviction. For the .01 gram of heroin conviction, he was jailed sixty days.
 
 
 5
 Based on the non-career offender provisions of the Guidelines, the probation officer computed a base offense level of twelve and adjusted it to ten for acceptance of responsibility. He assigned eight criminal history points placing Mendez into criminal history category IV. The resulting sentencing range was 15-21 months. Mendez's 1989 conviction for delivery of .8 grams of cocaine and the related convictions for deliveries of .19 grams of cocaine and .01 grams of heroin fulfilled the two prior felony convictions requirement of the career offender guideline provisions. U.S.S.G. § 4B1.1. These provisions placed Mendez at a thirty-two base offense level because his conviction carried a maximum penalty of twenty years, 21 U.S.C. § 841(b)(1)(C). The probation officer reduced the offense level to thirty for acceptance of responsibility. As a career offender, Mendez automatically received criminal history category VI. His sentencing range as a career offender is 168-210 months. Relying on Section 4A1.3, the probation officer nevertheless recommended that the judge sentence in the non-career offender range.
 
 
 6
 Commenting on the ten-fold increase in sentence that would result from applying the career offender sentencing range, the district court judge accepted the recommendation of the presentence report to depart downward. He sentenced Mendez to twenty-one months imprisonment, three years of supervised release, and participation in a community corrections center as well as a substance abuse treatment program.
 
 STANDARDS OF REVIEW
 
 7
 Under the standards of review for downward departures from the Sentencing Guidelines mandated by United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc), United States v. Valdez-Gonzalez, 957 F.2d 643 (9th Cir.1992), United States v. Floyd, 945 F.2d 1096, 1098-99 (9th Cir.1991), we must (1) review de novo whether the district court was authorized to depart downward from the Career Offender Section of the Guidelines; (2) review for clear error factual findings supporting the existence of circumstances which justify downward departure; (3) review for abuse of discretion the reasonableness of the extent of departure.
 
 DISCUSSION
 
 8
 In accordance with its mandate from Congress,[1] the Sentencing Guidelines Commission adopted provisions to enhance substantially the sentences received by career offenders, including "repeat drug offenders" and "repeat drug traffickers."[2] Under the Guidelines:
 
 
 9
 A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.
 
 
 10
 U.S.S.G. § 4B1.1. Although the career offender guidelines do not set out particular grounds upon which a court may depart downward from recommended sentencing ranges, the Ninth Circuit and other circuits have held that the sentencing judge may "rely on 'any ... policy statement[ ] or commentary in the guidelines that might warrant consideration in imposing sentence.' " United States v. Lawrence, 916 F.2d 553, 554 (9th Cir.1990) (citing U.S.S.G. § 1B1.1); see also United States v. Bowser, 941 F.2d 1019, 1023 (10th Cir.1991); United States v. Pinckney, 938 F.2d 519, 521 (4th Cir.1991); United States v. Adkins, 937 F.2d 947, 951 (4th Cir.1991); United States v. Senior, 935 F.2d 149, 151 (8th Cir.1991); United States v. Brown, 903 F.2d 540, 545 (8th Cir.1990). Since it is well established that a downward departure from career offender status is permissible, Lawrence, 916 F.2d at 554, we turn to the circumstances of this case to determine whether they justify downward departure.
 
 
 11
 Downward departure is not permitted unless the district court has identified a "mitigating circumstance of a kind or to a degree" the Sentencing Commission did not adequately take into account when formulating the guidelines. 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. Departures are authorized only in "limited circumstances." See United States v. Cruz-Ventura, 979 F.2d 146, 150 (9th Cir.1992) (citing United States v. Streit, 962 F.2d 894, 903 (9th Cir.1992)). A reviewing court "must consider the reasons for departure actually articulated by the sentencing court." United States v. Montenegro-Rojo, 908 F.2d 425 (9th Cir.1990). "There is ... no requirement that the sentencing judge recite the specific language of 18 U.S.C. § 3553(b)," the same language incorporated in Section 5K2.0. United States v. Sanchez, 933 F.2d 742, 745 (9th Cir.1991); United States v. Ramirez Acosta, 895 F.2d 597, 601 (9th Cir.1990).
 
 A. Small Quantities of Drugs Involved
 
 12
 In sentencing Mendez, the district court found that the career offender guidelines applied. However, it concluded that the career-offender category overrepresented defendant's criminal history and adopted the probation officer's recommendation to depart on the basis of Section 4A1.3.[3] The judge stated reasons for departure began:
 
 
 13
 It seems to me there are several reasons; one being [that] the Commission never considered a situation such as this where a person, who[,] [from] all the evidence we have before us, obviously is a very small-time dealer, mainly to support his own habit, ... [H]e possessed very small amounts.... On three separate occasions ... defendant sold small quantities ...
 
 
 14
 (emphasis added). Transcript of Sentencing Proceedings at 14-15. To the extent the district court focused only on the small quantities of drugs involved in the offenses, without any comparative analysis of the punishment offenders trafficking in different quantities of drugs receive, we doubt that the smallness of the quantities constitutes a permissible reason for departure. See U.S.S.G. § 5K2.0; see also United States v. Richardson, 923 F.2d 13, 17 (2d Cir.1991) (Commission adequately took small quantities into account, downward departures for career offenders convicted for small amounts of drugs are not justified on these grounds); United States v. Hays, 899 F.2d 515, 518-520 (6th Cir.1990), cert. denied, 498 U.S. 958 (1990) (same); but see United States v. Smith, 909 F.2d 1164, 1169 (8th Cir.1990) (departing from career offender guidelines where "facts of [defendant's criminal history] ... reveal each incident as a somewhat small-time offense;" one offense involving the sale of ten hits of LSD). We are unable to determine whether the court departed solely on the basis of the smallness of the quantities or whether he, like the district court in United States v. Reyes, Nos. 92-30030, 92-30059, slip op. ---- (9th Cir. ______, 1993), referred to quantities simply as a means to compare the treatment of drug offenders guilty of very different conduct. Defendant appears to have urged a comparative or proportionality analysis upon the court. To apply the career offender guidelines to Mendez, he argued, would be to subject him to the same penalty range as "the worst possible offender." Transcript of Sentencing Proceedings at 13. The district court may have been responding to and agreeing with that argument. Since we cannot be sure what the judge had in mind in invoking Section 4A1.3, we remand for a fuller explanation. See United States v. Durham, 941 F.2d 858, 861-62 (9th Cir.1991); United States v. Lira-Barraza, 941 F.2d 745, 749-50 (9th Cir.1991); United States v. Wells, 878 F.2d 1232, 1233 (9th Cir.1989).
 
 
 15
 B. Previous Leniency in State Court Sentencing
 
 
 16
 The district court listed among its reasons for departure that the defendant "went through the system on two or three occasions ... and received a slap on the wrist from the State and then was brought into Federal custody and hit with a career offender status." Transcript of Sentencing Proceedings at 14. He noted:
 
 
 17
 I don't believe that the Sentencing Commission ever considered what would occur when you're in a state where the guidelines might provide probation and the federal guidelines provide for as much as 210 months.... Quite obvious[ly] the prior sentences No. 1, 2 and 3 resulted in minimal sentences.
 
 
 18
 Id. The thrust of the court's concern was not, as the Government suggests, whether the Commission took into account prior state sentencing practices, which it obviously did, U.S.S.G. § 4B1.2 comment, (n. 4), but whether, in the context of the career offender provisions, where extraordinary discrepancies between sentences imposed by state courts and the sentence required under the Guidelines can arise, the lack of deterrent effect from previous leniency had been adequately considered.
 
 
 19
 The longest state court sentence imposed on Mendez for a "felony" drug offense was two years. The actual time he served was only five months. His most recent jail term, related to the heroin conviction, was but sixty days. Thus, the career offender sentencing range prescribed punishment 30-40 times more severe than the longest time Mendez had served for similar offenses. Even if sentenced at the low end of the Guidelines range, Mendez would be subject to a penalty 168 times longer than the state sentence he had last served. Having found that Mendez's criminal history was overrepresented by the career offender guidelines and that his offenses were sufficiently less serious than those committed by other career offenders to justify downward departure, the district court concluded that the gigantic leap in punishment was unwarranted. Instead, it imposed a lesser sentence, still almost seven times the longest period of incarceration Mendez ever had suffered and over thirty times his most recent jail tenure. In the court's words, "hit[ting]" Mendez with this kind of sentence sent a strong message against recidivist behavior without overstating the seriousness of his offenses or criminal history. Thus, three factors entered into the court's reasoning to depart: previous state court leniency; the minor nature of Mendez's offenses; and the extraordinary punishment exacted by the career offender guidelines.
 
 
 20
 We have encouraged consideration of all mitigating factors in combination. United States v. Cook, 938 F.2d 149, 153 (9th Cir.1991), ("total pattern of behavior" must be considered). We noted that
 
 
 21
 good judgment will often require the evaluation of a complex of factors. No single factor may be enough to point to the wise course of action. But a wise person will not look on each particular factor abstractly and alone. Rather it will be how the particular pieces fit together, converge, and influence each other that will lead to the correct decision.
 
 
 22
 Id. Other circuits have affirmed departures from career offender sentencing ranges based on a combination of factors. See United States v. Bowser, 941 F.2d 1019, 1024-25 (10th Cir.1991) (state court concurrent sentencing may combine with other factors to justify departure); United States v. Senior, 935 F.2d 149 (8th Cir.1991) (lenient state sentencing one of three factors contributing to a § 4A1.3 departure). These courts, like the district court here, relied on both Sections 4A1.3 and 5K2.0 to justify departure.
 
 
 23
 To depart is not to disregard the principle that "[g]eneral deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence." U.S.S.G. Ch. 4, Pt. A, intro. comment. Here, the court simply concluded that applying the career offender provisions to a minor offender whose previous sentencing history was marked by "minimal sentences" grossly overstated the seriousness of Mendez's behavior and that the message could be sent in a manner that would have deterrent effect, but, not be grossly disproportionate to sentences imposed for similar conduct.[4] In its view, Mendez's case, taken as a whole, was sufficiently unusual to justify departure. Cf. United States v. Joan, 883 F.2d 491, 495 (6th Cir.1989) (district court perceived lenient state court sentencing treatment differently where "defendant's primary livelihood and purpose in life [was] that of a gun-toting drug dealer who fits the classic profile of a career recidivist criminal").
 
 
 24
 Our recent decision in United States v. Sitton, 968 F.2d 947 (9th Cir.1992), holding that "sentencing courts may not depart from the Guidelines on the basis of disparities between state and federal sentencing regimes" does not counsel a different result. There we grounded our analysis in the "heartland" approach to sentencing:
 
 
 25
 In creating the Sentencing Commission, Congress sought to achieve national uniformity of sentences for similarly situated defendants.... [D]eparture from the Guidelines should be limited to the "atypical" case. Drug defendants often would face different sentences if tried on equivalent state charges. This disparity is not, therefore, an unusual factor warranting departure.
 
 
 26
 Sitton, 968 F.2d at 962 (citations omitted, emphasis added); see also U.S.S.G. Ch. 1, Pt. A, intro § 4(b). No argument for departure on the basis of overrepresentation of the criminal history was made in that case. See U.S.S.G. § 4A1.3. Nor, from the description of the facts, would such a departure have been warranted. While technically not career offenders subject to career offender sentencing ranges, the Sitton co-conspirators received sentences of similar severity to those applied under the career offender provisions. Significantly, their stiff sentences were not a result of the super-enhancement feature of the career offender guidelines. While a discrepancy between state and federal sentencing was at issue, the discrepancy did not come about as a result of the same combination of factors present in Mendez' case.[5] In short, unlike the Sitton defendants, Mendez was simply not "similarly situated" to other career offenders receiving the same sentence.[6] Consequently, in the view of the court his circumstances were sufficiently unusual to warrant departure. On these particular facts, based on all the converging factors, we agree that departure was permissible.
 
 C. Improper Prosecutorial Purpose
 
 27
 The district judge offered one further reason to depart from the career offender guidelines:
 
 
 28
 I do not believe the Sentencing Commission ever really took into consideration what might happen when the objective of the United States Government was to assist municipal authorities in "cleaning up a neighborhood" and dealing with a nuisance factor so there would be better business for the merchants in a given area to have people like this defendant off the streets; the result being that [the] individual would be taken off the streets into federal custody instead of state custody where you would keep him off the streets for a few months. That was not the purpose of the guidelines when they created the career offender status.
 
 
 29
 Transcript of Sentencing Proceedings at 14-15. The Government views this statement as an indication that the court "wishes to consider the government's charging decisions ... and be permitted to depart downwards because [one] U.S. Attorney's Office is 'tough' on street dealers while U.S. Attorney's offices elsewhere have other priorities." Appellant's Opening Brief at 19-20. This is not the thrust of the court's concern. The district court did not compare U.S. Attorney's offices, but federal prosecution with state prosecution and the consequences for federal versus state custody.[7] It did not suggest that it had discretion to second-guess the federal prosecutor's agenda. Rather, the district court objected to the federal prosecutor's using federal criminal statutes to attack problems for which the district court thought they were not designed or intended. The court apparently assumed that federal criminal law was not intended as a dragnet to reduce the nuisance to local businesses from drug trafficking.
 
 
 30
 Unfortunately, this assumption is not supported by the underlying legislation authorizing the career offender provisions[8] or its legislative history.[9] Neither of these indicates that Congress differentiates between crime that affects the general public and crime that affects a subcategory of business merchants. The career offender provisions clearly were directed at "repeat drug offenders" and "repeat drug traffickers" wherever they may be found. Accordingly, we find this basis for departure impermissible under the guidelines.
 
 CONCLUSION
 
 31
 Because we cannot "decide whether the district court would have imposed the same sentence had it not relied upon the invalid factor or factors," Williams v. United States, 112 S.Ct. 1112, 1120 (1992), we remand for resentencing.
 
 REMANDED[10]
 BRUNETTI, Circuit Judge, dissenting:
 
 32
 Because I believe that none of the rationales for downward departure advanced by the majority are permissible, I dissent.
 
 
 33
 For the reasons stated in my dissent in United States v. Reyes, Nos. 92-30030, 92-30059, slip op. (9th Cir. ______, 1993), I believe that neither the "small quantities" rationale nor the "comparative treatment" rationale is valid. As the majority notes, both the Second and Sixth Circuits have held that the Sentencing Commission adequately took small quantities of drugs into account and have therefore rejected this rationale as a valid basis for downward departure. See United States v. Richardson, 923 F.2d 13, 17 (2d Cir.1991); United States v. Hays, 899 F.2d 515, 518-20 (6th Cir.), cert. denied, 498 U.S. 958 (1990). The Reyes majority appears to agree with these holdings. See Reyes, slip op. at ---- ("we agree that the Commission did take into account varying penalties linked to different drug quantities").
 
 
 34
 The majority holds out as an acceptable alternative the "comparative or proportionality analysis" set forth in Reyes. Both Richardson and Hays impliedly rejected this rationale as a basis for downward departure; in fact, both see it as essentially indistinguishable from the "small quantities" rationale. The Richardson court stated that Richardson's contention that "the Sentencing Commission did not intend such harsh results for street dealers ... requires us to determine whether quantity was considered in the career offender regulation and, if so, whether it was adequately considered." Richardson, 923 F.2d at 15. The court rejected this argument, noting that
 
 
 35
 [t]he legislative history to the Guidelines and the language of the career offender proviso do not differentiate among types of dealers and do not in any way advocate treating street dealing career offenders differently from other career offenders. On the contrary, consistent treatment of all recidivists is encouraged.
 
 
 36
 Id. at 16. See also Hays, 899 F.2d at 519-20 ("[t]he guidelines state that [career offenders] are automatically given a high offense level based on the propensities they have demonstrated over time rather than on the particulars of their latest offense"). I agree with these courts that the Sentencing Commission adequately considered the consequences of treating career street dealers and kingpins in a comparatively similar (and harsh) manner, thereby invalidating the "comparative analysis" as a rationale for downward departure.
 
 
 37
 The majority recognizes that a reviewing court "must consider the reasons for departure actually articulated by the sentencing court," United States v. Montenegro-Rojo, 908 F.2d 425, 427 (9th Cir.1990), but does not follow this mandate. The majority quotes from the district court's fact-finding order and states that "the thrust of the court's concern was [whether] the lack of deterrent effect from previous leniency had been adequately considered." I find no such "thrust" in the district court's decision. The record is devoid of any reference to the presumed "lack of deterrent effect." As I stated in my dissent in Reyes, it is our job to look at what the district court actually said, not to hypothesize what we would have said had we been in its shoes.
 
 
 38
 Even assuming that the district court's rationale for downward departure was the alleged "lack of deterrent effect," such a rationale would not be valid. For a factor to be a permissible ground for departure under U.S.S.G. § 5K2.0, it must be a "mitigating circumstance of a kind or to a degree" not adequately taken into account. If the majority is stating that the state's lenient treatment of Mendez's prior offenses indicates their minor nature, then the rationale collapses into the impermissible "small quantities" ground for departure. If the argument is that the Guidelines do not adequately take into account someone like Mendez, who never had a chance really to learn his lesson because he kept getting only minor slaps on the wrist, then the argument fails because the Guidelines evince a clear intent to punish recidivism harshly even if earlier punishment was light. In sum, not only was this ground for departure never advanced by the district court, it would not have been permissible even if it had been.
 
 
 39
 I understand the majority's discomfort with the harsh consequences of the "war on drugs." However, I agree with the concurring judge in Richardson, who stated that
 
 
 40
 application of the career offender provision of the Guidelines in certain cases may be overly harsh and the lack of discretion allowed the trial judge is disturbing. Nonetheless, curtailment of judicial discretion is what Congress intended by approval of the career offender provision in particular, and the Guidelines in general. Any remedy lies with Congress.
 
 
 41
 Richardson, 923 F.2d at 17 (Restani, J., concurring). The majority has advanced no legitimate grounds for downward departure in this case; I would therefore vacate the sentence and remand for resentencing within the applicable career offender range.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 28 U.S.C. § 994(h) requires the Commission to "specify a sentence to a term of imprisonment at or near the maximum term authorized" by statute for certain offenders
 
 
 [2]
 S.Rep. No. 225, 98th Cong., 2d Sess. 37 (1984), reprinted in 1984 U.S.C.A.N. 3220, 3358
 
 
 [3]
 Section 4A1.3 indicates that
 [t]here may be cases where the court concludes that a defendant's criminal history category significantly overrepresents the seriousness of a defendant's criminal history.... The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category ... and therefore consider a downward departure from the guidelines.
 U.S.S.G. § 4A1.3.
 
 
 [4]
 An analysis based on proportionality lay at the core of the district court's reasoning in United States v. Reyes, Nos. 92-30030, 92-30059, slip op. (9th Cir. ----, 1993). A concern for proportionality undergirds the declared purposes of the Guidelines. The Sentencing Commission is charged with "avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences." 28 U.S.C. § 991(b)(1)(B). See United States v. Jackson, 921 F.2d 985 (10th Cir.1990) ("[p]roportionality refers to treating different cases differently, or having the sentence fit the crime"); United States v. Hughes, 901 F.2d 830 (10th Cir.), cert. denied, 498 U.S. 859 (1990) (ability to depart downward tempers potential for career offender provisions to " 'mechanically' aggregat[e] disparate offenses without regard to the seriousness of the offenses or adequat[e] consider[ation] [of] the defendant's personal characteristics")
 
 
 [5]
 The Sitton defendants sought departures to sentencing ranges applicable under state law. We uphold a departure from one federal sentencing range to another, where the latter range results in a sentence in keeping with the principles of deterring recidivists and giving sentences proportionate to those received by other federal offenders
 
 
 [6]
 See supra note 5
 
 
 [7]
 The court's assertion that the Commission did not adequately take into consideration the effect of the Guidelines in increasing the numbers of prisoners in federal custody is incorrect. The Sentencing Guidelines expressly state:
 The Commission has also examined its sentencing ranges in light of their likely impact upon prison population. Specific legislation, such as the Anti-Drug Abuse Act of 1986 and the career offender provisions of the Sentencing Reform Act of 1984 (28 U.S.C. § 994(h)) required the Commission to promulgate guidelines that will lead to substantial [federal] prison population increases.
 U.S.S.G. Ch. 1, Pt. A, intro. § 4(g); see also United States v. Martinez-Cortez, 924 F.2d 921 (9th Cir.1991) (expected 10% increase in federal prison population over ten-year period as a result of the application of Sentencing Guidelines did not violate Congressional mandate that Guidelines minimize likelihood that federal prison populations will exceed capacity of federal prisons).
 
 
 [8]
 28 U.S.C. § 994(h) (specifying drug-related offenses as triggering "a sentence to a term of imprisonment at or near the maximum term authorized")
 
 
 [9]
 S.Rep. No. 225, 98th Cong., 2d Sess. 37 (1984), reprinted in 1984 U.S.C.A.N. 3220, 3358
 
 
 [10]
 On remand, the court should also state the reasons for the extent of the departure consistent with the guidance provided in United States v. Reyes, Nos. 92-30030, 92-30059, slip op. ---- (9th Cir. ______, 1993)