**UNITED STATES of America,**
**Plaintiff–Appellee,**
**Cross–Appellant,**

v.

**Ricky Allen HAYS,**
**Defendant–Appellant,**
**Cross–Appellee.**

**Nos. 89–5029, 89–5157.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 26, 1989.
Decided March 29, 1990.

Joseph M. Whittle, U.S. Atty., Terry Cushing, Alexander T. Taft, Jr., Asst. U.S. Atty. (argued), Office of the U.S. Atty., Louisville, Ky., for U.S.

Vicki L. Carmichael (argued), Carmichael & Skaggs, Louisville, Ky., for Ricky Allen Hays.

Before MERRITT, Chief Judge; RYAN, Circuit Judge; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

The defendant, Hays, appeals his conviction for conspiracy to possess cocaine and marijuana with intent to distribute (count 1), and possession of marijuana with intent to distribute (count 2). He also appeals the fine imposed. The government appeals his sentence. Because we find that there was ample evidence from which a rational trier of fact could infer guilt, we affirm the conviction. We further affirm the fine. But because we find that the district court improperly relied on certain factors to reduce the sentence of the defendant, a career drug offender, we reverse the sentence and remand.

## I

In May 1988, Detective Gary Epperson, a Louisville police officer working undercover, was investigating Steve Gordon, a suspected drug dealer. On two different dates, Gordon sold cocaine to a police informant while Epperson watched; both times the defendant Hays drove Gordon to the site, dropped him off, and waited for him at a nearby gas station. The informant told police that the driver of the car, Hays, supplied the cocaine, and described the car Hays was driving. After one of these sales, Hays and Gordon drove together to Hays' apartment.

The police got a warrant to search Hays, his apartment, and his car. They arrested Hays and Gordon that night as they left the apartment. In Hays' pocket police found a small set of scales, of the kind used to weigh drugs.

Inside the apartment, where Hays lived alone, police found seven pounds of marijuana, a triple beam scale, a smaller set of scales, drug paraphernalia, detailed records of Hays' drug trade, and $12,789 in cash. The marijuana had been packaged in small plastic bags in quantities ranging from one half ounce to one and one half ounces; some was loose but some had been compressed into bricks, which is the form in which it is shipped. More than $11,000 in large denominations was found in a black bag and still more money, about $1,700 wrapped with rubber bands, was found laying on a desk. At the time of his arrest, Hays worked part-time as a painter and repairman, earning $6 an hour.

Police found no cocaine, although they did find paraphernalia usually associated with the cocaine trade, including a milk jug filled with the corners of plastic sandwich bags. The cocaine sold to the police informant had come in a corner cut off a plastic bag and tied in a knot.

The records, kept on loose sheets of paper, were found strewn around the apartment. Their careful notations give an account of Hays' daily drug trade, including the coded names of his customers, the quantities he sold, and the amounts he was owed. For example, frequent notations of

the number eight enclosed in a circle stood for an "eightball," street language for an eighth of an ounce of cocaine. Similar references to pounds, ounces, grams, and the word "scored" are also apparent. Another notation mentions $96,200 in a box, although police found neither the money nor the box. From this ledger, Det. Epperson, a very experienced drug investigator, estimated that Hays sold as much as $12,000 worth of drugs per day.

Hays was convicted of conspiracy to possess cocaine and marijuana with intent to distribute under 21 U.S.C. § 846, as well as possession of marijuana with intent to distribute, under 21 U.S.C. § 841(a)(1). He had a long criminal record, but relevant here are two recent prior convictions for drug trafficking. Because of these prior convictions, Hays was classified as a career offender under the Sentencing Guidelines, and under the guidelines would have been sentenced to between 360 months and life imprisonment.

The district court, however, did not impose this sentence. Exercising discretion it believed it had, the court found that the small amount of drugs in Hays' apartment, and the fact that, though he had been a recurrent drug dealer he had not been a violent one, were "mitigating circumstances ... [which] could not adequately have been taken into consideration by the Sentencing Commission...." It sentenced Hays to 240 months for conspiracy and 120 months for possession, the sentences to be served concurrently; five years of supervised release; and a $500,000 fine. The sentences were to run concurrently with recent convictions in state and federal court for trafficking.

Hays challenges the sufficiency of the evidence used to convict him of conspiracy, as well as the size of his fine, and the government challenges the district court's departure from the guidelines.[1]

## II

We are convinced there was ample evidence to support Hays' conviction for conspiracy.

Police twice watched Hays drive Gordon to sell cocaine to a police informant and then, on at least one of those occasions, return together to Hays' apartment. A search of that apartment proved these were more than isolated sales; police found marijuana which had been shipped in bulk, thousands of dollars in cash, and equipment used to process, measure, and package cocaine. *See also United States v. Bourjaily*, 781 F.2d 539, 545 (6th Cir.1986), *aff'd*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (large amount of cocaine found in defendant's car created inference of a conspiracy).

The facts in *United States v. Resnick*, 745 F.2d 1179 (8th Cir.1984) are quite similar to those in this case. There, an undercover policeman bought drugs from a man who bought them from the defendant. The man told police that he had bought cocaine from the defendant, and police saw the defendant drive to and from the place where the sales were made. The court held that this was sufficient evidence to uphold a conviction under 21 U.S.C. § 846, adding, "It is not necessary that the evidence preclude other reasonable possibilities." *Id.* at 1185.

Most damning of all to Hays were the records, which reveal a busy and lucrative trade with dozens of buyers, netting as much as $12,000 a day. From these ledgers, which were kept with a bookkeeper's precision, Det. Epperson deduced that Hays had sold four pounds of cocaine and 250 pounds of marijuana in the six months prior to his arrest. Hays admits he was an addict, but these records show he was a businessman as well, a middleman who bought drugs in bulk and sold them for resale. *See also United States v. Grunsfeld*, 558 F.2d 1231, 1235 (6th Cir.1977),

---

**1.** We note that the government belatedly has submitted to the court an authorization of this appeal executed prior to the notice of appeal by the then-acting Solicitor General, as is required under 18 U.S.C. § 3742(b). This court would have been without jurisdiction to hear the government's appeal had such an authorization by the Solicitor General or Attorney General not been filed. The authorization should have been filed with the notice of appeal.

*cert. denied,* 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 761 (1978) ("[W]here there is additional evidence beyond mere purchase and sale, from which knowledge of the conspiracy may be inferred, courts have upheld conspiracy convictions.").

Courts have been chary of inferring drug conspiracies from nothing more than scraps of paper which the government called records, particularly when those records were disorganized, or found outside the defendant's possession, *see United States v. Brown,* 584 F.2d 252 (8th Cir. 1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979), or formed the whole of the government's evidence. *See United States v. Ordonez,* 737 F.2d 793 (9th Cir.1984). The government's case against Hays is more comprehensive than that. The scale of this operation, as revealed in the records, supported by the amount of drugs and paraphernalia found in the apartment, and confirmed by the fact that Hays drove Gordon to the site of two cocaine sales, persuades us that a rational trier of fact could have found beyond a reasonable doubt that Hays conspired with Gordon and others to sell cocaine and marijuana. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

### III

■ We also reject Hays' appeal that the district court misapplied the Sentencing Guidelines by assessing a fine he could not pay. A defendant convicted under 21 U.S.C. § 841 could be fined up to $4.5 million; Hays was fined $500,000.

Section 5E1.2(d)(2) of the guidelines provides that, in determining the amount of a fine, a court must consider the defendant's ability to pay it "in light of his earning capacity and financial resources." The application notes for that section state that the court may consider any undisclosed income or assets of the defendant, or unex-

plained expenditures which are not consistent with his reported income.

The district court determined that Hays had unexplained assets, and so could afford to pay a large fine. It based this determination on the large amount of cash seized in Hays' apartment and the even larger amounts referred to in Hays' ledgers. A reference to $96,200 in a box was particularly emphasized. Although police have not found this money, the court believed that it did exist, and dismissed Hays' protestations of poverty as "totally incredible."

The alleged misapplication of the guidelines in this case raises a question of fact, and we accord great deference to the district court's findings. We cannot weigh the credibility of trial witnesses, including the testimony of Det. Epperson in explaining Hays' account records. Given the scale of Hays' operations, we cannot say that the district court's conclusion that he could pay a half million dollar fine was clearly erroneous.[2]

### IV

The government presents a more difficult question for our review. It argues that the district court improperly departed from the guidelines because the factors it relied on to reduce Hays' sentence are not mitigating circumstances under the guidelines. We agree, and remand the case for resentencing.

Hays had been convicted of drug trafficking at least twice before, and so was classified as a career offender under the guidelines. *See* U.S.S.G. § 4B1.1. Under the guidelines, his sentence would have been between 30 years and life imprisonment. But the court sentenced Hays to 20 years in prison, to be followed by 10 years of supervised release, and a $500,000 fine. It expressed two reasons for its downward

---

**2.** We reject the government's contention that this court lacks jurisdiction to consider an appeal of a fine within the applicable sentencing range. It is clear from both the statute and the conference report which accompanied it that a defendant may appeal such a fine if the conten-

tion is that the guidelines were applied illegally or incorrectly. *See* 18 U.S.C. § 3742(a) (Supp. 1989); H.Rep. No. 1030, 98th Cong., 2d Sess. 80, *reprinted in* 1984 U.S.Code Cong. & Admin. News (98 Stat.) 3182, 3263.

departure: that Hays had been caught with a relatively small amount of drugs, and that he had not used violence. The court found it particularly inappropriate to give Hays a life sentence because, "[W]hile it may express the will of Congress, this is not a life sentence operation.... [T]his is a small operation."[3] The court "seriously" suggested that the government appeal the sentence, saying it "would like some guidance on the application of the guidelines and departure."

Courts must impose the sentence specified in the guidelines "unless ... there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (Supp.1989). But this discretion is not a license to depart from the guidelines at will; a court should not depart unless it "finds an atypical case, one to which a guideline linguistically applies but where conduct significantly differs from the norm...." U.S.S.G. Ch. 1, Pt. A, Introduction 4(b). "Whether departure is appropriate, then, depends in large part upon what circumstances the Sentencing Commission took into account in framing the guidelines." *United States v. Williams*, 891 F.2d 962, 964 (1st Cir.1989).

■ The guidelines are a new feature in the law and so it is not surprising that courts have wrestled to find an appropriate standard of review for departure which gives deference to the district court's familiarity with the case, but not so much deference as to erode the guidelines into nothing. The First Circuit has proposed a three-part test which we believe strikes the appropriate balance. *See United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir. 1989).[4]

The first step is to determine whether the factors on which the district court relied are sufficiently unusual to warrant departure. This is a question of law, which is reviewed *de novo*. *See id.; United States v. Ryan*, 866 F.2d 604, 610 (3d Cir.1989). The second step is to determine whether the circumstances, if they may be considered at all, actually exist in the case. This is a question of fact, which should not be disturbed unless clearly erroneous. *Diaz–Villafane*, 874 F.2d at 49; 18 U.S.C. § 3742(e) (Supp.1989). Only then should the court take the third step, which is to determine whether the weight the lower court gave to a particular circumstance, whether aggravating or mitigating, was reasonable; that is, whether the sentencing court abused its discretion. *See Diaz–Villafane*, 874 F.2d at 49; *United States v. Rodriguez*, 882 F.2d 1059, 1067 (6th Cir. 1989); 18 U.S.C. §§ 3742(e)(3), (f)(2) (Supp. 1989). If, as in the case before us, we conclude that the district court based its departure on factors the guidelines have adequately considered, our review need go no further. *See Williams*, 891 F.2d at 964.

■ For an offender who is not, under the guidelines, a career offender, the amount of drugs determines the base offense level—the starting number of sentencing points from which the trial court may make adjustments, up or down, for aggravating or mitigating circumstances. *See* U.S.S.G. § 2D1.1(c). For all classes of drug felons except career offenders, the guidelines are finely calibrated to the amount and type of drugs involved. For drug felons who are not career offenders, the number of points given for a particular quantity of drugs is absolute; the sentencing court's role is almost clerical, to determine the amount of drugs involved and to consult the sentencing chart for the number of points assigned to that offense.

Without dispute, Hays is a career drug offender within the meaning of the guidelines. The guidelines state that such defendants are automatically given a high offense level based on the propensities they have demonstrated over time rather than

---

**3.** In spite of this statement, we assume that the district court considered that it was operating within the general context of the guidelines.

**4.** We note that while Judge Breyer, a member of the Sentencing Commission, did not author this opinion, he was a member of the panel and concurred therein.

on the particulars of their latest offense. *See* U.S.S.G. § 4B1.1. Drug quantity, which is so important to setting the base offense level for other drug offenders, is explicitly to be disregarded when sentencing career drug offenders. *See also United States v. Smith,* 887 F.2d 104, 108 n. 6 (6th Cir.1989) (suggesting that drug quantity is not a mitigating factor). Because drug quantity has been adequately considered in this situation and ruled out as a mitigating factor, the district court erred as a matter of law by giving it any weight.

■ The district court improperly relied on Hays' lack of violence for the same reason. A defendant receives a greater sentence if he uses a weapon or harms someone than if he does not; the absence of violence is implicitly considered to the extent that the punishment is not increased by giving additional sentencing points. *See, e.g.,* U.S.S.G. § 2D1.1(b)(1) (higher offense level if criminal carried a firearm); § 2D1.5, note 2 (upward departure allowed in a continuing criminal enterprise if defendant sanctioned use of violence).

As if this proposition needed further support, the guidelines require that a criminal be sentenced as a career offender if he has two prior felony convictions involving either violence *or* drugs. Even the most pacifistic drug traffickers are to be severely punished. As the Sentencing Commission has written:

> A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence.

U.S.S.G. Ch. 4, Pt. A, intro. comment.

Because the lack of violence has been adequately considered in the guidelines, it could not serve as a cause for departure from the guidelines. *See also Williams,* 891 F.2d at 965 (district court erred, as a matter of law, by reducing sentence of defendant bank robber who had not carried a gun).

Hays has a "long as your arm" history of drug convictions. If the district court did not believe his was a "life sentence operation," it was free to sentence him at the low end of the very broad range allowed in the guidelines. But here the district court relied on factors which were thoroughly considered by the Sentencing Commission in such a case and so are not "suitable grist for the departure mill." *Williams,* 891 F.2d at 964.

Therefore, we AFFIRM the defendant's conviction and, because we determine that the sentence of incarceration was illegal, we REVERSE the sentence and REMAND for resentencing.

MERRITT, Chief Judge, concurring.

For the reasons stated in my dissenting opinion in *United States v. Brewer,* 899 F.2d 503, 511–515 (6th Cir.1990) federal appellate courts should use not a "de novo" standard of review in cases applying the new sentencing guidelines but a "due deference" standard as expressly required by the governing statute: "The Court of Appeals ... shall give due deference to the district court's application of the guidelines...." 18 U.S.C. § 3742(e). I would, therefore, apply an abuse of discretion standard to the question of whether the Sentencing Commission fully considered the particular combination of mitigating facts and circumstances which a district court has found to exist in a given case. The question of whether a given combination of sentencing facts makes a case "typical" or "atypical" (see *Guidelines Manual,* ch. I, § 4(b), Policy Statement, Nov. 1989) should be left to the district court under an abuse of discretion standard.

In this departure case, however, I do not find that the question is what standard of review we should follow in the ordinary departure case. Unlike other departure cases, the instant case does not concern the extent to which the Commission considered aggravating and mitigating factors in general, or considered the peculiar combination of aggravating and mitigating circumstances found in this case. Nor is the question

one of the accuracy or reasonableness of the District Court's calculation and application of the Guidelines.

Rather than focus on the deference due district court decisions in ordinary departure cases, our case requires us to consider only the deference due an unequivocal congressional pronouncement on the length of mandatory sentences to be imposed on a certain class of offenders. In 28 U.S.C. § 994(h) (Supp.1989), Congress explicitly required that "the Guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized [by statute]" for particular third-time offenders. The defendant Hays is concededly such an offender. Turning then to 21 U.S.C. § 841(b)(1)(B)(ii)(II) (Supp.1989), which prescribes the penalty for the offense for which Hays was convicted, we find that Congress designed a sentence range of 10 years to life for non-career offenders. For purposes of sentencing third-time offenders under 28 U.S.C. § 994(h), therefore, the "maximum term authorized" is life imprisonment. With this in mind, the Sentencing Commission created a "career offender" provision, which, in Hays's case, sets a sentence of 30 years to life. *See Guidelines* § 4B1.1.

As a result of the interplay of these statutory provisions, the issue appropriate for appellate review is whether the District Court's sentence in this case of 20 years is a sentence "at or near the maximum term authorized," as the statute requires. A 20-year sentence is not "at or near" life imprisonment and therefore does not follow the intent of Congress that such career offenders receive the "maximum term authorized" under the statute. It is on that basis that I would reverse the District Court's opinion. I would remand it to the District Court for sentencing in line with the intent expressly set out for career offenders in 28 U.S.C. § 994(h) and 21 U.S.C. § 841(b)(1)(B)(ii)(II).