961 F.2d 1579
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Newall CHARLTON, Defendant/Appellant.
 Nos. 90-6454, 91-5091.
 United States Court of Appeals, Sixth Circuit.
 April 28, 1992.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges, and CHURCHILL, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Newall Charlton appeals his conviction and sentence on three counts relating to the excavation of a Cherokee Indian burial cave located on public lands in the Cherokee National Forest. Charlton alleges that (1) the district court erred in allowing the jury to view transcripts of a recorded conversation between he and a government informant; (2) the introduction of his co-defendants' guilty pleas was unfairly prejudicial; (3) the introduction into evidence of certain exhibits was improper; and (4) the upward departure from the United States Sentencing Guidelines ("U.S.S.G.") was improper. We affirm Charlton's conviction and sentence.
 
 
 2
 * In early 1990, U.S. Forestry Service Special Agents discovered that a cave was being excavated in the Dry Hill section of Johnson County, Tennessee. The cave was located within the Cherokee National Forest. The Special Agents discovered various digging equipment and artifacts in and around the cave.
 
 
 3
 On March 28, 1990, the Special Agents began covert surveillance of the cave site. The next day three men entered the cave and began digging and excavating. The three men, Robert Mains, Freddy Caudill and Allen Hudler, were arrested.
 
 
 4
 Thereafter, defendant Charlton contacted Robert Mains and offered to sell him a turtle pendant and two black pipes that allegedly came from the Dry Hill cave in Johnson County. Mains informed the authorities of Charlton's call and agreed to wear a hidden tape recorder at a meeting with Charlton. At the meeting on April 2, 1990, Charlton discussed in detail his participation in the excavation and removal of various artifacts from the Dry Hill cave. The next day, Charlton further discussed his participation and characterized himself as the "archaeological expert" of the group.
 
 
 5
 At trial, Mains testified about the two recorded conversations, and about purchasing a string of copper beads and a bone hairpin from Charlton in January or February 1990. Other government witnesses also testified about Charlton's participation in the excavation of the Dry Hill cave.
 
 II.
 A.
 
 6
 Charlton raises for the first time on appeal an objection to the introduction into evidence of the transcripts of the tape recorded conversations between he and Robert Mains. "Rule 103, Fed.R.Evid., forecloses reliance on the admission of evidence as the basis of appeal where timely objections with specific grounds are not made at the trial, unless the substantial right of a party is affected." American Anodco, Inc. v. Reynolds Metals Co., 743 F.2d 417, 424 (6th Cir.1984). Therefore, Charlton has waived this basis for appeal unless the transcripts were so prejudicial that their use deprived him of a fair trial.
 
 
 7
 The admission of tape recordings and transcripts at trial rest within the sound discretion of the trial court. United States v. Robinson, 707 F.2d 872, 875 (6th Cir.1983). Robinson holds that transcripts utilized at trial must accurately reflect a tape's content and that when portions of the tape are inaudible, the corresponding portions of the transcript should be deleted. Id. at 879. It is undisputed that in this case certain portions of the tape were inaudible and yet a transcript of what allegedly was said in the inaudible portions of the tape was given to the jury. Charlton claims this amounts to substantial prejudice under Robinson.
 
 
 8
 We disagree for several reasons. First, the Robinson procedures for dealing with transcripts of tape recordings rest on a concern over reliability of the transcripts. See id. at 878-79. In this case the government provided both the tapes and initial drafts of the transcripts to defense counsel shortly after the pretrial order was entered on June 11, 1990. When it became obvious the case was going to trial, the government had witness Mains review the tapes and the transcripts with the investigator. Since he was a party to the conversations, Mains was able to clarify certain words and phrases the stenographer was unable to transcribe. These transcripts were then provided to the defendant who sought a postponement in the trial from October 9, 1990 for additional review. The trial began on October 11 and was continued until completed on October 16, 1990. Therefore, defense counsel had the tapes with ample time to develop any discrepancy with the transcripts or to produce a transcript of his own. Defense counsel did not object to the introduction of the tapes or the use of the revised transcript to aid the jury. Indeed, defense counsel apparently used the revised transcript to support defendant's version of events. This tactical decision cannot be turned into an abuse of discretion by the court. See United States v. Davis, 929 F.2d 554, 559 (10th Cir.1991).
 
 
 9
 We recognize that the trial court did not follow the procedures set forth by this court in Robinson for determining the accuracy of the revised transcript. However, our own review of the two transcripts reveals few material changes. Moreover, in this case the allegedly inaccurate conversation occurred between a witness who testified and was subject to cross-examination and the defendant. Under these circumstances, the defendant had the opportunity to challenge the accuracy of the transcript through direct questioning before the jury. See United States v. Martin, 920 F.2d 393, 396 (6th Cir.1990).
 
 
 10
 Further, the district court instructed the jury that the tapes, not the transcripts, were evidence and that any discrepancy was to be governed by the tapes. We have previously held that such an instruction prevents any undue prejudice from the use of allegedly inaccurate transcripts. United States v. Moreno, 933 F.2d 362, 375 (6th Cir.), cert. denied, 112 S.Ct. 265 (1991).
 
 
 11
 We will find an abuse of discretion by the trial court in admitting a tape recording "only where the unintelligible portions of the tape recording are so substantial that the recording as a whole is untrustworthy." United States v. Scaife, 749 F.2d 338, 345 (6th Cir.1984). The defendant has not indicated specifically what portions of the tape were unintelligible or what prejudice he suffered from the revised transcript. Absent anything more specific than a presumption that the jury relied on the transcript and a generalized claim that the jury must have been prejudiced, we find no reversible error. United States v. Costa, 691 F.2d 1358, 1363 (11th Cir.1982). The district court did not abuse its discretion in allowing the use of the revised transcript under these circumstances.
 
 B.
 
 12
 Charlton also claims that the introduction of his co-defendants' guilty pleas during their direct examination by the government was plain error. Charlton did not object to these statements in the district court.
 
 
 13
 This claim is without merit. While the government may not use a witness' guilty plea as evidence of another defendant's guilt, the plea may properly be considered as evidence of a witness' credibility, United States v. Christian, 786 F.2d 203, 214 (6th Cir.1986), and may also be used to show the witness' background and his first-hand knowledge of and participation in the offense. United States v. Walker, 871 F.2d 1298, 1303 (6th Cir.1989). Admissibility thus turns on the purpose for which the plea was offered. Here, we find no reason to doubt the government's claim that the guilty pleas were introduced for the purpose of aiding the jury in assessing the witness' credibility.
 
 
 14
 Moreover, we have held that any prejudice associated with the use of co-defendants guilty pleas is negated when the pleading individual testifies at trial. Christian, 786 F.2d at 214. Here, all three pleading individuals testified at trial. That the district court gave no limiting instruction on this issue is thus irrelevant since Charlton had the opportunity to cross-examine the witnesses. See Walker, 871 F.2d at 1303.
 
 C.
 
 15
 Charlton claims that the introduction in evidence of certain items was unfairly prejudicial. Specifically, he claims that the introduction of a bone hairpin and copper necklace was improper because the government did not reveal its intention to use these exhibits at trial until October 9, 1990, the day of trial.
 
 
 16
 However, defense counsel requested and received a continuance to examine these exhibits and the tape transcripts until October 11, 1990. At trial, defense counsel failed to object to the introduction of these two items. The items were properly admitted and the failure to object, after receiving a continuance, constitutes a waiver of this issue for purposes of appeal. See American Anodco, 743 F.2d at 424 (failure to object to introduction of evidence waives the admission of such evidence as basis for appeal).
 
 D.
 
 17
 Finally, Charlton contends that the district court erred by departing upwards from the original guideline range. Charlton contends that he was punished for exercising his constitutional right to a jury trial because his co-defendants received lesser sentences.
 
 
 18
 In evaluating a departure from the guidelines, this court uses the three-part test articulated in United States v. Hays, 899 F.2d 515, 519 (6th Cir.), cert. denied, 111 S.Ct. 385 (1990). The first step is to determine whether the factors on which the district court relied are sufficiently unusual and not considered by the guidelines as to warrant departure. Id. If the factors were adequately considered by the guidelines, we need not proceed to the other two steps in the analysis. United States v. Parker, 912 F.2d 156, 158 (6th Cir.1990).
 
 
 19
 We reject Charlton's claim that he was entitled to a sentence similar to the sentences of his co-defendants that pled guilty. The uniformity the guidelines sought was designed to come from the application of the guideline provisions themselves, not from the sentences meted out to a co-defendant. Parker, 912 F.2d at 158 n. *. However, we cannot conclude that the district court properly departed upward from the guideline range based upon the value of the archaeological resources damaged by Charlton. We believe that the value of archaeological resources was adequately considered by the guidelines, and therefore was an inappropriate basis for upward departure. See Parker, 912 F.2d at 158.
 
 
 20
 Under U.S.S.G. § 2B1.1(b)(1), offenses involving property theft or destruction of greater than $100 are punished by determining the value of the property involved. The district court held that the value of the archaeological resources in the Dry Hill cave were not capable of computation. We believe this was error.
 
 
 21
 Charlton was convicted of violating 16 U.S.C. § 470ee, which makes the damaging or defacing of an archaeological resource a two-year felony when the commercial and archaeological value of the resource exceeds $500.00. During the trial, the government used an expert witness, archaeologist Quentin Bass, who estimated a damage and cost of restoration and repair of the cave at approximately $91,852.00. This figure was determined by the application of 36 C.F.R. § 296.14(c). Neither the use of the regulations to make the computation, nor the resulting total value were challenged at trial or at sentencing by Charlton. The result was an accurate estimate of the damage caused by the illegal excavation at the Dry Hill cave.
 
 
 22
 Losses caused by a defendant's theft in excess of $70,000 result in a mandatory 8-point increase in a defendant's base offense level under U.S.S.G. § 2B1.1(b)(1)(I). Thus, if the government's valuation of the loss is accepted, the proper guideline range for defendant Charlton was 15-21 months. Since 36 C.F.R. § 296.14 was specifically enacted to explain the penalty provisions of 16 U.S.C. § 470ee, the specific dollar amount estimated by the government's expert should have been adopted by the sentencing report. Under this formulation, the 21 month sentence actually imposed was within the appropriate guideline range. Therefore, we need not remand for resentencing despite the district court's erroneous upward departure. Charlton's conviction and sentence are AFFIRMED.
 
 
 23
 CHURCHILL, Senior District Judge, concurring.
 
 
 24
 I concur in the result because the defendant did not object to the use of the transcripts of conversations between Charlton and Mains. Had he objected, however, the trial court would have been compelled to exclude the transcripts even if they reliably reflected the recorded conversations.
 
 
 25
 Traditionally, someone other than a party to the recorded conversation prepares a transcript by listening to the recorded sounds and putting on paper the words they hear. In this case, a party to the conversation edited the transcripts. The transcripts then became what he remembered, or what he alleges that he remembered, rather than what he heard. The transcripts as thus prepared are hearsay and their use raises issues of constitutional dimension.
 
 
 
 *
 The Honorable James P. Churchill, United States Senior District Judge for the Eastern District of Michigan, sitting by designation