51 F.3d 273
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Manuel DIAZ-VILLEGAS, Defendant-Appellant.
 No. 94-3242.
 United States Court of Appeals, Sixth Circuit.
 April 4, 1995.
 
 Before: MILBURN and NELSON, Circuit Judges, and JOINER,* District Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant Juan Manuel Diaz-Villegas appeals his judgment of conviction and sentence following his plea of guilty to one count of conspiracy to possess with the intent to distribute marijuana in violation of 21 U.S.C. Secs. 846 and 841(a)(1). On appeal, the issues are (1) whether the district court erred in determining the base offense level by considering the actual quantity of drugs involved rather the quantity of drugs that defendant believed was to be distributed, and (2) whether the district court erred in imposing a fine where there was no evidence offered by defendant as to his future inability to pay. For the reasons that follow, we affirm.
 
 I.
 
 2
 Defendant Juan Manuel Diaz-Villegas, and co-defendants Gonzalo Ruiz Serna ("Ruiz"), Jorge Saldivar, and Esiquiel Gonzalez Yanez, Jr. were arrested at a motel in Cincinnati, Ohio, as they were attempting to deliver 926 pounds of marijuana to a confidential informant working with the Federal Bureau of Investigations ("FBI"). They had been operating a marijuana distribution network in Texas, and the transaction in Cincinnati was the result of previous telephone conversations between the FBI informant and co-defendant Ruiz.
 
 
 3
 On July 7, 1993, the federal grand jury issued a four-count indictment, naming defendant in three of the counts. Defendant was charged with conspiracy to possess with the intent to distribute marijuana in violation of 21 U.S.C. Secs. 846 and 841(a)(1) (count 1), interstate travel in aid of an unlawful conspiracy in violation of 18 U.S.C. Sec. 1952 (count 3), and possession with the intent to distribute marijuana in violation of 21 U.S.C. Sec. 841(a)(1) (count 4). On September 1, 1993, defendant pled guilty to count 1 of the indictment as part of a plea agreement. Pursuant to the plea agreement, the government agreed to dismiss the remaining counts against defendant at the time of sentencing, to recommend that defendant be given a three-level downward departure for acceptance of responsibility pursuant to United States Sentencing Guidelines ("U.S.S.G.") Sec. 3E1.1, and to make a motion for downward departure for substantial assistance to authorities pursuant to U.S.S.G. Sec. 5K1.1.
 
 
 4
 A presentence investigation report was prepared for the district court on September 29, 1993. It recited that the weight of the marijuana involved in the conspiracy had been determined to be 926 pounds. Using the conversion factor in the U.S.S.G., this equated to 420 kilograms and corresponded to a base offense level of 28. In addition, the report indicated that defendant owned a home, two cars, and a piece of heavy equipment used in defendant's family business, and had no identifiable liabilities; it suggested that one of the cars could be sold to provide money to pay a fine of up to $10,000.
 
 
 5
 On January 26, 1994, a sentencing hearing was held, and defense counsel made two objections to the presentence investigation report. First, defense counsel asked the district court to consider determining the base offense level based on the quantity of marijuana defendant believed was to be distributed rather than the actual quantity of marijuana. This objection was never specifically ruled on by the district court. Second, defense counsel argued that the weight for purposes of determining the base offense level was incorrectly computed because the weight of the packaging material was not taken into account. The district court rejected this argument, stating that even discounting the weight for the packaging material, the preponderance of the evidence demonstrated a weight in excess of 400 kilograms was proper for determining the base offense level of 28. In addition to the objections, defense counsel informed the court that defendant had sold the two cars mentioned in the report as a possible source of money to pay a fine.
 
 
 6
 A total offense level of 25 was computed after the district court lowered the base offense level three-levels for defendant's acceptance of responsibility. This made the recommended sentencing range under the U.S.S.G. 57 to 71 months. However, because of the statutorily required minimum sentence of five years, the actual sentencing range was 60 to 71 months. The government, in accordance with the plea agreement, moved for a downward departure pursuant to U.S.S.G. Sec. 5K1.1 to an offense level of 21, which has a recommended sentencing range of 37 to 46 months. The district court departed downward, and it imposed a sentence of 37 months incarceration to be followed by a period of four years supervised release. In addition, the district court imposed a $7500 fine, due immediately. This timely appeal followed.
 
 II.
 A.
 
 7
 Defendant argues that the district court erred in determining the quantity of drugs attributable to him. Specifically, defendant submits that it was error for the district court, in determining the base offense level, to consider the quantity of marijuana actually involved in the conspiracy rather than the quantity of marijuana defendant believed was to be distributed. Defendant states that he understood that the quantity of marijuana involved in the transaction was between 700 and 800 pounds, rather the actual quantity of 926 pounds.
 
 
 8
 A district court's findings of fact as to the quantity of drugs for which a defendant is to be held accountable are accepted by this court unless they are clearly erroneous. United States v. Jenkins, 4 F.3d 1338, 1345-46 (6th Cir.1993), cert. denied, 114 S.Ct. 1547 (1994); United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 906 and 989 and 990 (1990). The findings need only be supported by a preponderance of the evidence. Jenkins, 4 F.3d at 1346; United States v. Nelson, 922 F.2d 311, 316 (6th Cir.1990), cert. denied, 499 U.S. 981 (1991). Further, we review the district court's application of the sentencing guidelines to the facts with deference. Jenkins, 4 F.3d at 1346.
 
 
 9
 Under U.S.S.G. Sec. 1B1.3(a)(1)(A), a defendant is accountable for all quantities of drugs with which he was directly involved. United States v. Ledezma, 26 F.3d 636, 646 (6th Cir.), cert. denied, 115 S.Ct. 349 (1994). In addition, under U.S.S.G. Sec. 1B1.3(a)(1)(B), a defendant is also accountable for all quantities of drugs attributable to other members of a conspiracy, provided that those quantities were known or reasonably foreseeable to the defendant. Ledezma, 26 F.3d at 646; United States v. Moss, 9 F.3d 543, 552 (6th Cir.1993); see United States v. Sims, 975 F.2d 1225, 1243 (6th Cir.1992), cert. denied, 113 S.Ct. 1315 and 1617 and 1620 (1993). Considering these two subsections makes clear that there is no requirement that a defendant have knowledge of the actual quantity of drugs with which he was directly involved. See U.S.S.G. Sec. 1B1.3 commentary (application note 2) ("The requirement of reasonable foreseeability applies only in respect to the conduct ... of others.... It does not apply to conduct that the defendant personally undertakes, aids, abets, counsels, commands, induces, procures, or willfully causes...."); see also United States v. Salazar, 5 F.3d 445, 446 (9th Cir.1993) (holding a defendant accountable for the entire quantity of drugs he personally imported regardless of his knowledge of the specific type of drug imported).
 
 
 10
 Applying these rules to the facts of this case, the district court did not commit clear error in attributing all 926 pounds of marijuana to defendant. Defendant played an integral part in the attempted sale of marijuana as demonstrated by the fact that he flew from Texas to Cincinnati to meet with the FBI informant and conclude the transaction. There was evidence that the four members of the conspiracy would share the proceeds of the sale of the marijuana, and that defendant was to receive $50,000. In addition, it was foreseeable to defendant that the transaction might involve up to 1000 pounds of marijuana. The FBI informant originally stated to Ruiz that she wanted to purchase 1000 pounds of marijuana; Ruiz initially indicated that they could provide only 500 pounds, but later told the FBI informant that the moving van was being loaded with "everything you wanted." J.A. 41.
 
 
 11
 Defendant asserts that United States v. Hayes, 971 F.2d 115 (8th Cir.1992), supports his position that he should not be sentenced based on the entire quantity of marijuana. In Hayes, the defendant was sentenced based on a package that originally contained 243 grams of crack cocaine before postal inspectors replaced all but 10 grams with a substitute substance and made a controlled delivery. Hayes, 971 F.2d at 116. The Eighth Circuit held that if the defendant reasonably believed that the package contained only a small amount of crack cocaine, he could only be sentenced based on the lesser quantity. Id. at 117-18. It was significant that the defendant had no knowledge as to the quantity of crack cocaine in the package, and based on the defendant's testimony, it was possible that the defendant reasonably believed the package contained a much smaller quantity of crack cocaine. In addition, the court was careful to distinguish "those cases where the defendant never actually knows the type and quantity of drugs he is involved with, ... [but] it is usually foreseeable to the defendant that the container may contain a large quantity of drugs ... because the defendant either knows or suspects that he is aiding a larger distribution network." It stated that "[i]n these situations, a court can appropriately find the defendant responsible for the entire amount of drugs contained in the closed package." Id. at 117. Thus, Hayes is clearly distinguishable.
 
 
 12
 Defendant also claims that United States v. Gessa, 971 F.2d 1257 (6th Cir.1992) (en banc), and United States v. Hodges, 935 F.2d 766 (6th Cir.), cert. denied, 502 U.S. 889 and 915 (1991), indicate that a sentencing court should look at an individual defendant's mens rea in deciding the appropriate quantity of drugs to attribute to him. In Gessa, we merely held that a sentencing court must exclude the quantity of cocaine that is the object of an alleged conspiracy if the defendant did not have the intention and was not reasonably capable of producing that specific quantity. Gessa, 971 F.2d at 1265-67. In Hodges, we held that the district court, in determining the sentence of a defendant with lesser involvement in a drug conspiracy, properly included all drug quantities that the defendant was aware of or that were reasonably foreseeable to him. Hodges, 935 F.2d at 774. Therefore, both Gessa and Hodges are inapposite. Accordingly, we reject defendant's argument that the district court erred in holding defendant responsible for the entire quantity of marijuana.
 
 B.
 
 13
 Defendant next argues that the imposition of a fine in this case was improper. The presentence investigation report indicated that defendant owned two cars, one of which could have been sold to provide money to pay a fine of up to $10,000. At the presentencing hearing, defendant's counsel informed the district court that defendant had sold the two cars mentioned in the report as a possible source of money to pay a fine. Defendant asserts that the district court erred in imposing a $7500 fine because the statements made by defense counsel at the presentencing hearing made the district court aware that defendant had no funds available to pay a fine. The sentencing hearing transcript is devoid of any explicit objection to the conclusion that defendant had the ability to pay a fine. However, because defense counsel's statements could arguably be construed as an objection, we will consider the merits of defendant's argument.
 
 
 14
 U.S.S.G. Sec. 5E1.2(a) provides that the district court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." Pursuant to U.S.S.G. Sec. 5E1.2(f), the district court may impose a lesser fine or waive the fine "[i]f the defendant establishes that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the preceding provisions, or (2) imposition of a fine would unduly burden the defendant's dependents." Thus, it is clear that the burden is on the defendant to show that he is unable to pay a fine. United States v. Perez, 871 F.2d 45, 48 (6th Cir.), cert. denied, 492 U.S. 910 (1989). Moreover, a district court's finding as to a defendant's ability or inability to pay a fine is reviewed only for clear error. United States v. Hickey, 917 F.2d 901, 906 (6th Cir.1990).
 
 
 15
 In this case, defendant did not present any evidence in the district court that he would not be able to pay a fine. On appeal, defendant claims that he had a right to rely on the presentence investigation report to show his inability to pay. The presentence investigation report concluded that defendant had the ability to pay a $10,000 fine by selling one of his two cars, but it made no conclusion regarding defendant's inability to pay in the future. Thus, defendant could not rely exclusively on the presentence investigation report to show his inability to pay a fine. See United States v. Vincent, 20 F.3d 229, 240 (6th Cir.1994) (holding that the district court had a duty to impose a fine where the defendant presented no evidence of his inability to pay a fine and relied exclusively on a presentence report that made no conclusion as to his future ability to pay). Defendant failed to meet his burden of proving that he could not pay the fine ordered.
 
 
 16
 Defendant states, "This court has required that, before a fine can be imposed, a district court must make a determination that a defendant can pay a fine." Appellant's Brief at 9. Defendant then cites and discusses two cases: Hickey, 917 F.2d at 906-07, and United States v. Hays, 899 F.2d 515, 518 (6th Cir.), cert. denied, 498 U.S. 958 (1990). However, there is nothing in these cases that supports defendant's contention, and defendant wholly misrepresents the holding of Hickey.[1] Furthermore, while we have recognized a split among the circuits on whether a district court must make express findings on the record of the factors it must consider in determining whether and to what to extent to impose a fine, see United States v. Tosca, 18 F.3d 1352, 1354 & n. 2 (6th Cir.1994) (noting a split among the circuits), we have never explicitly ruled on the issue.[2] Because defendant never met his initial burden of presenting evidence of his inability to pay a fine, we need not decide the issue here.
 
 
 17
 Defendant asserts that the district court failed to consider the burden that the fine would place upon his family. Although U.S.S.G. Sec. 5E1.2(c)(3) provides for a minimum fine of $10,000 for this offense, the district court imposed a fine of only $7500, from which it can be inferred that the district court considered the burden that the fine would place upon defendant's family. Moreover, the record at sentencing shows that defendant's wife would receive financial assistance from her family while defendant was in prison. In a related argument, defendant also claims that the imposition of a fine would force defendant's family to sell either their house or the piece of equipment. However, based on the presentence investigation report, it does not appear that defendant's family would be "forced" to sell the house or piece of equipment. While the presentence investigation report suggests that the sale of one of defendant's cars could provide a source of money to pay a fine, it does not rule out any other alternatives. For example, the presentence investigation report indicated that defendant had "no identifiable financial liabilities," J.A. 46, but it gave no consideration to the possibility of a loan, which could be secured with defendant's $120,000 house or $30,000 piece of equipment. Thus, we reject this argument and hold that the district court's imposition of a fine was proper.
 
 III.
 
 18
 For the reasons stated, the district court's judgment is AFFIRMED.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 In his brief, defendant said the following about Hickey: "[T]he Court upheld a fine because the [presentence investigation report] clearly showed that the defendant had an uncontested net worth of over $50,000. The Court found under those circumstances, a $15,000 fine was not erroneous." Appellant's Brief at 9. Defendant could not be more incorrect. In Hickey, the district court refused to impose a fine on a defendant based on its determination that he was unable to pay a fine. However, the evidence showed that the defendant had an uncontested net worth of $50,000, and possibly a net worth of $250,500 considering the defendant's interest in a spendthrift trust. Because the minimum fine under the U.S.S.G. for the defendant's offense was $15,000, we determined that "the district court's finding that defendant was unable to pay a fine was clearly erroneous" and held that "the district court erred by not imposing a fine within the range specified in the Guidelines." Hickey, 917 F.2d at 907. Accordingly, "the sentence [was] VACATED and the case [was] REMANDED to the district court for resentencing with instructions to impose a fine within the range specified in the Sentencing Guidelines." Id. (emphasis in original)
 
 
 [2]
 In Tosca, we do suggest that express findings are not required: "In this record, it may be fairly inferred that the district court considered not only defendant's present ability to pay and the other factors required by law, but also the probability that he could earn enough in and after prison to pay the fine in installments." Tosca, 18 F.3d at 1355