**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael GOLDSBY, Defendant–Appellant.**

**No. 00–4219.**

United States Court of Appeals, Sixth Circuit.

May 15, 2002.

Before MOORE and COLE, Circuit Judges; and TARNOW, District Judge.*

## OPINION

This action stems from a criminal conviction for possession with intent to distribute cocaine base under 21 U.S.C. § 841(a)(1), and the district court's decision not to make a downward departure and to impose a sentence of thirty years incarceration. The defendant, Michael Goldsby, contends that he was not properly sentenced under the Sentencing Guidelines because of the low quantity of drugs involved, that the district court was not aware that it had the authority to make a downward departure, and that his sentence is cruel and unusual under the Eighth Amendment. Defendant–Appellant Goldsby now appeals from the district court's sentence and decision not to make a downward departure.

This appeal presents three issues for our review: (1) Whether the district court properly sentenced Defendant as a career offender despite the low quantity of drugs involved; (2) Whether the district court properly recognized its ability under the Sentencing Guidelines to make a downward departure; and (3) Whether the district court properly sentenced Defendant to thirty years incarceration despite the Eighth Amendment prohibition against cruel and unusual punishment. We **AFFIRM**.

## BACKGROUND

### A. Factual Background

Over an eleven-month period, from November 1989 to October 1990, Michael Goldsby was arrested five times for drug offenses. All of these offenses were non-violent, involved small quantities of drugs, and were committed while Goldsby was eighteen and nineteen years old. Goldsby pleaded guilty pursuant to a plea agreement on the first two offenses, and was sentenced to probation. He also entered a plea bargain on the final three offenses, and received a one and a half year sentence to run concurrently with a two-year sentence for violation of his earlier probation.

On December 28, 1996, six years after these earlier offenses, Keith Sulzer, an officer with the Cleveland Police Department, questioned Goldsby after he spotted Goldsby standing nude behind a parked vehicle. Officer Sulzer ran a warrant check on Goldsby and found that he had no driver's license and three outstanding traffic-related contempt warrants. Goldsby was arrested and his vehicle towed. During a routine inventory of the vehicle, Sulzer found a black leather jacket. Inside the jacket was a small plastic bag that contained 5.88 grams of crack cocaine.

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

## B.  Procedural History

Goldsby and nine others were indicted by a grand jury on May 21, 1997.  Goldsby was charged with: (a) possession of 5.88 grams of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and (b) conspiracy to distribute and possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846.  Goldsby's trial before a jury began on August 14, 1997. At trial, a federal Bureau of Alcohol, Tobacco, and Firearms agent testified that possession of 5.88 grams was inconsistent with personal use.  Goldsby was convicted on both counts on August 28, 1997.  On November 19, 1997, he was sentenced to a term of 383 months incarceration, to be followed by eight years supervised release.

On appeal, Goldsby argued that the evidence adduced at trial was insufficient to convict him on either charge.  *United States v. Austin*, No. 97–4386, 2000 WL 32017, at *20 (6th Cir.2000) (per curiam). The panel found that, viewed in the light most favorable to the government, "this evidence is sufficient to support the possession with intent to distribute charge." *Id.* However, as to the conspiracy charge, the panel noted that the United States "must prove an agreement to violate the drug laws, and that the defendant knew of, intended to join, and participate in the conspiracy." *Id.* (citing *United States v. Phibbs*, 999 F.2d 1053, 1063 (6th Cir. 1993)).  The panel found that the testimony at trial did not establish that the drugs in Goldsby's possession were linked "to the conspiracy charged in the superceding indictment." *Id.* Accordingly, the panel reversed the § 846 conspiracy charge.

A resentencing hearing was held on August 31, 2000 on the 21 U.S.C. § 841(a)(1) charge, possession of 5.88 grams of cocaine base with intent to distribute.  Despite the reversal of the § 846 conviction, as a ca-

reer offender Goldsby's sentence under the Sentencing Guidelines remained at level thirty-seven, criminal history category six, resulting in a recommendation of 360 months to life.  U.S.S.G. §§ 4A1.1 and 4B1.1. The district court sentenced Goldsby to 360 months of incarceration to be followed by eight years of supervised release.  Goldsby filed his timely notice of appeal on September 29, 2000.

## DISCUSSION

### A.  Whether the district court properly sentenced Defendant under the Sentencing Guidelines as a career offender despite the low quantity of drugs involved.

#### 1.  Standard of Review

A question of statutory interpretation is reviewed de novo.  *United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir.1996).

#### 2.  Analysis

Goldsby argues that the purpose of the Sentencing Guidelines is to reduce disparities among defendants with similar records and allow flexibility to permit individualized sentences when warranted.  *See* 28 U.S.C. § 991(b)(1)(B).  Goldsby points out that this purpose is inconsistent with the application of the career offender provisions of 28 U.S.C. § 994(i)(1), which mandate a substantial term of imprisonment for defendants with a history of two or more prior convictions.  *See* 28 U.S.C. § 994(i)(1).  This inconsistency is especially dramatic when the career offender provisions are applied to low-level drug offenders with non-violent past offenses.  Goldsby argues that these career sentencing provisions lump together street sellers of narcotics with large wholesalers and violent, repeat criminals who have two or more prior convictions.

The career offender provisions of § 994(i)(1) do not consider the amount of narcotics involved in the current or past felonies. All that is required is that the defendant "has a history of two or more prior Federal, State, or local felony convictions for offenses committed on different occasions." Section 4B1.1 of the Sentencing Guidelines requires that the career offender be eighteen years old, that the instant offense be a crime of violence *or* a controlled substance offense, and that the two prior felony convictions are *either* a crime of violence *or* a controlled substance offense. U.S. SENTENCING GUIDELINES MANUAL § 4B1.1 (1995) ("U.S.S.G."). When these requirements are met, the resulting sentencing recommendation for Goldsby is a prison term of 360 months to life. This is the same sentencing recommendation as for a large wholesaler of narcotics or for a violent, repeat criminal whose past felony convictions are more serious than those of Goldsby.

The district court's statutory interpretation of 28 U.S.C. § 994(i)(1) survives our de novo review. It properly sentenced Goldsby under the Sentencing Guidelines as a career offender despite the low quantity of drugs involved. *Hill*, 79 F.3d at 1477. Goldsby has three qualifying career offender convictions, all for trafficking. He also has four additional felony convictions, two of which are drug-related. Neither of the parties contest that these convictions qualify under the language of 28 U.S.C. § 994 and U.S.S.G. § 4B1.1.

■ Of course, Goldsby is not the first to point out the inherent conflict between the stated purpose of the Sentencing Guidelines in 28 U.S.C. § 991 and the career offender provisions in 28 U.S.C. § 994(i)(1) and U.S.S.G. § 4B1.1. The Ninth Circuit noted in 1993 that the "penalty range is not sufficient to differentiate between two offenders with the same base offense level. The range afforded simply does not reflect the degree of differential in the seriousness of underlying criminal histories or offenses." *United States v. Reyes*, 8 F.3d 1379, 1385–86 (9th Cir.1993). The court agreed that the Commission that drafted the Guidelines took into account varying penalties linked to different drug quantities, but neglected to consider the "sentencing ranges resulting in exceptional discrepancies." *Id.* at 1387 (citing *United States v. Ward*, 914 F.2d 1340, 1348 (9th Cir.1990)). The Fourth Circuit has also noted the degree to which the determination of career offender status is "fraught with potential imprecision." *United States v. Adkins*, 937 F.2d 947, 952 (4th Cir.1991). In particular, the court criticized the career offender definition for "encompass[ing] an enormous variety of crimes ... clearly [causing] a potential for wide discrepancy in the gravity of past antisocial conduct among 'career offenders.'" *Id.*

These observations notwithstanding, the Sentencing Guidelines do offer an important outlet for unfair applications of the career offender provisions—an outlet specifically contemplated and endorsed in *Reyes*, 8 F.3d at 1385. When a certain guideline applies, but its application is unfair or involves conduct significantly different from the norm, then departure may be warranted. *Id.* (quoting U.S.S.G. Ch. 1, Pt. A intro. § 4(b)). *See United States v. Bowser*, 941 F.2d 1019, 1023 (10th Cir. 1991). Although our precedent under *United States v. Hays*, 899 F.2d 515 (6th Cir.1990), once held that these factors were not appropriate for a downward departure, the Supreme Court later explicitly allowed for such departures when circumstances so warrant. *Koon v. United States*, 518 U.S. 81, 95, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

Because the Supreme Court has expressly permitted a downward departure from the strictures of the career offender provisions, Goldsby cannot claim that the career offender provision is fundamentally unfair. Goldsby may not have been awarded a downward departure, but that is different from saying that departure was not available to the district court. Accordingly, the district court properly sentenced Goldsby under the Sentencing Guidelines as a career offender despite the low quantity of drugs involved.

**B. Whether the district court properly recognized its ability to make a downward departure.**

### 1. Standard of Review

Generally, we do not review a district court's failure to exercise its discretion to grant a downward departure. *United States v. Coleman*, 188 F.3d 354, 357 (6th Cir.1999) (en banc); *Hill*, 79 F.3d at 1487. If the district court "incorrectly believed that [it] lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines," however, we review the application of the guidelines to a particular set of facts de novo and the ultimate decision regarding departure for an abuse of discretion. *United States v. Wells*, 211 F.3d 988, 1003 (6th Cir.2000); *see also Koon*, 518 U.S. at 100; *United States v. Smith*, 278 F.3d 605, 609 (6th Cir.2002). We review de novo whether the district court was aware of its authority to make a downward departure. *Smith*, 278 F.3d at 609.

### 2. Analysis

■ Goldsby submits that the district court was unaware that it had the discretion to depart from the range suggested by the Sentencing Guidelines in §§ 4A1.1

and 4B1.1. Goldsby cites to *United States v. Williams*, 78 F.Supp.2d 189 (S.D.N.Y. 1999), which notes that the goals of the Sentencing Guidelines can only be achieved if judges "recognize their obligation to depart from the guideline sentencing range in appropriate cases." *Id.* at 190. As long as the district court realized it had the authority to consider mitigating circumstances and make a downward departure, however, we will not review its failure to exercise such discretion. *Coleman*, 188 F.3d at 357; *Hill*, 79 F.3d at 1487.

Goldsby argues that *United States v. Washington*,[1] Nos. 00–3389 & 00–3392, 2001 WL 1301744 (6th Cir.2001), and *United States v. Smith*, 278 F.3d 605 (6th Cir. 2002), provide authority for the district court to make a downward departure where the small quantity of drugs takes the case out of the heartland of cases envisioned by the career offender provision in the Sentencing Guidelines. *Washington* acknowledges the impact of *Koon*, 518 U.S. at 92–93, which recognizes a district court's discretion to alter a sentence in unusual cases where mitigating or aggravating factors are present but are not adequately taken into account by the Sentencing Guidelines. *Washington*, 2001 WL 1301744, at *4. *Washington* thus endorses a district court's decision to make a downward departure where the defendant's criminal history category significantly over-represents the seriousness of his criminal history. *Smith* holds that where the record is ambiguous as to whether a defendant's criminal history category over-states his prior criminal conduct, the usually strong presumption that sentencing courts are aware of their authority to depart will not be applied. *Smith*, 278 F.3d

---

**1.** We note that *Washington*, 2001 WL 1301744, is an unpublished case and its prec-

edential authority does not bind us. *See* 6TH CIR. R. 28(g); 6TH CIR. IOP 206.

at 610. In *Smith,* the court observed that *Koon* distinguished *Hays,* 899 F.2d at 519, which noted that the small quantity of drugs seized in the particular case could not be relied upon as a mitigating factor to permit a downward departure. *Smith,* 278 F.3d at 610. However, *Smith* is limited to the case where the sentencing judge makes statements indicating that he believed he lacked the authority to make a downward departure; it does not require a sentencing judge to state affirmatively that he knows he has the authority to grant a downward departure. *Id.* at 611.

Here, it is clear that the district court was aware of its authority to make a downward departure. While *Smith* does not require affirmative statements of recognition of this authority, two such instances are present in the record. *Id.* The first instance is a statement by the district court regarding the government's use of *Hays,* 899 F.2d at 519. The United States, in response to the defendant's argument that "a small amount of drugs in the current offense, or the length of time since the prior offense, and ... the non-violent criminal history of the defendant" are appropriate factors for a downward departure, argued that the Sixth Circuit in *Hays* had rejected those very factors as not appropriate for a departure. The district court asked whether the *Hays* case is post-*Koon,* and the United States conceded that *Hays* was pre-*Koon.* The question indicates that the district court recognized that *Koon* gave it the discretion to downward depart due to the low quantity of drugs involved and did not feel bound by the earlier, contrary Sixth Circuit precedent in *Hays.*

The second instance occurred later at sentencing, where the district court noted:

> And that being the case, and particularly in view of the fact that the defendant also qualifies as a career criminal merely through the number of points he has amassed, it seems to me totally inappropriate to grant a downward departure. I recognize that you understand [from] certain Supreme Court decisions that the Court has the authority to grant a downward departure, but the Court does not choose to.

J.A. at 162.

This statement demonstrates that the district court's decision not to make a downward departure was based on its own appraisal that a downward departure was unwarranted.

We do not agree with Goldsby that the district court's recognition of its discretion to make a downward departure is limited by its observation that the Sentencing Commission did not create a low quantity of drugs exception to the Guidelines. The passage in question states:

> Now, the Sentencing Commission could have said serious cases, or cases involving large numbers of controlled substances, or they could have said cases spread over a period of time, but they didn't do that. They didn't specify. They didn't further define the type of cases that would elevate one to the career criminal status.

J.A. at 162.

Simply because the district court explains why no low drug-quantity exception exists is no evidence that the district court was unaware that it could make a downward departure—especially where the record shows the district court explicitly recognized its authority to depart. Thus, we conclude that the district court was aware of its authority to make a downward departure. *Smith,* 278 F.3d at 609. Because the district court did not incorrectly believe that it lacked the discretion to consider Goldsby's mitigating circumstances, and clearly stated that it "does not choose to"

exercise this discretion, we will not review the district court's failure to exercise its discretion to grant a downward departure. *See Coleman,* 188 F.3d at 357; *Hill,* 79 F.3d at 1487; *see also Wells,* 211 F.3d at 1003.

Accordingly, the district court properly recognized its ability to make a downward departure because of the low quantity of drugs before choosing not to make a departure.

**C. Whether the district court properly sentenced Defendant to thirty years incarceration despite the Eighth Amendment prohibition against cruel and unusual punishment.**

### 1. Standard of Review

A challenge to a suit on constitutional grounds is reviewed de novo. *Hill,* 79 F.3d at 1489.

### 2. Analysis

■ Goldsby argues that a thirty-year prison term for possessing 5.88 grams of crack cocaine amounts to a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Goldsby cites to the proportionality test endorsed in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), for analyzing whether a given punishment violates the Eighth Amendment. That test rests on objective criteria, including:

(i) the gravity of the offense and the harshness of the penalty;

(ii) the sentences imposed on other criminals in the same jurisdiction ...; and

(iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Id.* at 292.

However, a reviewing court will " 'rarely be required to engage in [this] extended analysis,' " and only then for cases of capital punishment or life without parole. *United States v. McCann,* 835 F.2d 1184, 1188 (6th Cir.1987) (quoting *Solem,* 463 U.S. at 290 n. 16). For anything short of these two forms of punishment, "federal courts will *not* engage in a proportionality analysis." *United States v. Thomas,* 49 F.3d 253, 261 (6th Cir.1995) (emphasis added).

The district court properly sentenced Defendant to thirty years incarceration despite the Eighth Amendment prohibition against cruel and unusual punishment. As a reviewing court, we may not apply the *Solem* analysis unless the defendant was sentenced to capital punishment or life without parole. *McCann,* 835 F.2d at 1188. As such, we are not allowed to engage in a proportionality analysis of the sentence Goldsby received. *Thomas,* 49 F.3d at 261. Goldsby's assertion that in state court he would have received a sentence of only one to five years does not change this analysis.

■ Goldsby is also barred from his Eighth Amendment proportionality argument because he did not raise it in the district court. An Eighth Amendment claim can not be raised where it was not first raised in the district court, absent "exceptional circumstances." *United States v. Ursery,* 109 F.3d 1129, 1137 (6th Cir.1997). No such circumstances are present here.

Accordingly, the district court properly sentenced Defendant to thirty years incarceration despite the Eighth Amendment prohibition against cruel and unusual punishment.

### CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.